IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
IN NASHVILLE

| | |
|---|---|
| **HEATHER MITCHELL** ) | |
| ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| vs. ) | No. _____ |
| ) | **JURY DEMANDED** |
| ) | |
| **INTREPID COLLEGE PREPARATORY** ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

**COMES THE PLAINTIFF,** HEATHER MITCHELL, through counsel, submitting this Complaint and showing:

## I. INTRODUCTION

1. This case involves lack of credentialing and deception by a private charter school, Intrepid College Preparatory ("Intrepid"), toward its student body and its authorizing body, Metro Nashville Public Schools (MNPS).

2. Intrepid takes federal funds and must deliver an education to all students, including those with disabilities. It doesn't. Its administration peers into the incoming IEPs of students and refuses entry to higher-needs students with disabilities. It's blatantly discriminatory.

3. Intrepid also promises an education delivered by licensed, certified, and highly qualified teachers when, in fact, most are not. To prevent the public and MNPS from finding out,

1

Intrepid entered the relatively few teachers of record who *are* licensed and certified teachers as being the "teachers of record" for multiple classes they simply do not teach. On paper, that made it appear that Intrepid was fulfilling its obligations under a Charter Agreement and state and federal law. But in reality, it was not.

## II. PARTIES, JURISDICTION, AND VENUE

4. The Plaintiff is Heather Mitchell who is a citizen and resident of Mt. Juliet, Tennessee, in Wilson County, Tennessee.

5. Heather Mitchell is the former Dean of Academic Operations of Intrepid's High School (Independence Academy). She witnessed both the discrimination against students with special needs and Intrepid's deception concerning credentialing. She reported these illegal activities to MNPS and, shortly thereafter, Intrepid fired her for it. Accordingly, this action is filed for damages.

6. The Defendant, Intrepid College Preparatory ("Intrepid"), is a charter school through Metro Nashville Public Schools (MNPS), located in the greater Nashville area, in Davidson County. It operates a middle school known as Opportunity Academy Middle School and a high school known as Independence Academy High School. Its principal headquarters are located at 5221 Hickory Hollow Pkwy, Antioch, Tennessee 37013.

7. This action arises out of the retaliation provisions of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, respectively, 29 U.S.C. § 794(d) and 42 U.S.C. § 12203(a). It also arises from Section 1983 and the First Amendment to the United States Constitution. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331. It

has supplemental jurisdiction over the state law claim of the Tennessee Public Protection Act, Tenn. Code Ann. §50-1-304. 28 U.S.C. §1367.

8. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the cause of action arose in Davidson County and the Defendant may be found in Davidson County.

## III. FACTS

9. Intrepid is a charter school established under Tenn. Code Annotated §49-13-205 through the Tennessee Public Charter School Commission. It is charged with managing, controlling, and operating a public school.

10. Intrepid is a public school where students are drawn through a lottery.

*Intrepid's Charter Agreement*

11. Metro Nashville Public Schools (MNPS) is the "Chartering Authority," or "authorizer," that approved Intrepid's charter school.

12. MNPS and Intrepid entered a "Chartering Agreement" for a term of ten years, with provisions for renewal. This Chartering Agreement sets forth the relationship between MNPS and Intrepid, along with requirements that Intrepid adhere to state and federal laws. Students admitted to Intrepid are third party beneficiaries to the contract. To serve these students, the Charter Agreement requires Intrepid to submit to "ongoing monitoring of the academic, organizational and financial performance." *Charter Agreement, Recitals.*

13. Per the MNPS Charter Authorization Handbook: "All Metro Nashville Public School (MNPS) authorized charter schools shall comply with the requirements of applicable state and federal law, including Tenn. Code. Ann. Title 49, Chapter 13, the rules of the Tennessee State

3

Board of Education, the rules of the Tennessee Public Charter School Commission, MNPS Board of Education Policy 1.900-1.901, and the MNPS Charter School Authorization Handbook."

*Intrepid Must Serve Students with Special Needs*

14. The Charter Agreement itself requires Intrepid to provide "[s]pecial education services, related services, and accommodations for students who are eligible under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act of 1973 (Section 504), the Americans with Disabilities Act (ADA), or any appliable provisions of state law."

15. Per the Charter Agreement, the Chartering Authority, MNPS, is considered the local education agency (LEA) for purposes of Intrepid's compliance with the Individuals with Disabilities Education Act. *Charter Agreement, §2.3.*

16. As the LEA, under the Charter Agreement, MNPS is "responsible for ensuring that the requirements of federal and state special education law and regulations are met in the Charter School, and that special education and related services are provided in the Charter School in the same manner as they are provided in Chartering Authority's direct-run schools." *Charter Agreement, §2.3.1.*

17. As the Charter School, Intrepid "assumes responsibility for the provision of services, development and implementation of individualized education programs (IEPs), etc." "Exceptional education services at the Charter School will be delivered by individuals or agencies licensed and/or qualified to provide exceptional education services required by Tennessee law and the IDEA." The responsibility "for arranging the provision of services required by their IEP" lies with the Charter School's "qualified exceptional education coordinator." *Charter Agreement, §2.3.3.*

18. "[A]ll costs associated with providing educational services to students with disabilities are the responsibility of the Charter School." It is the Charter School, Intrepid, who "shall bear the financial responsibility for reevaluations and the provision of all services consistent with student IEPs. The Charter School's financial obligation begins once a student has an IEP." Intrepid receives federal funding passed from the Chartering Authority, MNPS, to Intrepid based on the per pupil allocation from the department of education. *Charter Agreement, §2.3.3.*

19. The Charter Agreement, along with state and federal laws for students with disabilities, ensure that "[n]o student shall be denied admission nor counseled out of the Charter School due to the nature, extent, or severity of his/her disability or due to the student's request for, or actual need for, exceptional education services or accommodations pursuant to Section 504. *Charter Agreement, §2.3.4;* Tenn. Code Ann. §49-13-111(b); 42 U.S.C. § 12132 and 28 C.F.R. § 35.130 (ADA); and 29 U.S.C. § 794(a) and 34 C.F.R. §§ 104.4(b)(1)(i)-(iv), (vii) (Section 504).

*Intrepid Must Ensure Licensed Staffing*

20. Under the Charter Agreement, along with state and federal law, Intrepid "shall ensure that teachers are licensed pursuant to state statute and state board of education rules, and meet applicable federal qualifications including highly qualified, exceptional education certified, and ESL certified." *Charter Agreement, §3.1.*

21. A "licensed teacher" for purposes of providing instruction at a charter school under Tennessee state law, "means a person over the age of eighteen (18) who meets the qualifications of chapter 5, part 1 of this title and holds a valid Tennessee educator license in compliance with the rules and regulations of the state board of education." Tenn. Code Ann. § 49-

13-104(11); Tenn. Code Ann. § 49-13-111(j) ("All teachers in a public charter school must hold a valid Tennessee educator license.").

22. And under federal law, a charter school's special education teachers must "have obtained full State certification as a special education teacher" pursuant to Tennessee's state standards. 20 U.S.C. § 1412(a)(14); 34 C.F.R. §300.156

*Intrepid Employs Mitchell*

23. In 2023, Intrepid hired Mitchell, a former curriculum coordinator over 33 schools in Manatee County, Florida. As a result, she was familiar with special education laws including the Individuals with Disabilities Education Act (IDEA).

24. Mitchell served, first, as Intrepid's Director of Academic Operations and, for the 2023-2024 school year, also as Dean of Academic Operations. For both positions, she worked at Intrepid's high school, "Independence Academy," and she was paid approximately $113,000 annually for both positions.

*Protected Activities*

25. Beginning in the summer of 2024, Mitchell reasonably and in good faith believed that Intrepid was flouting federal and state laws protecting students with disabilities. She watched Intrepid administrators previewing the Individual Education Programs (IEPs) of incoming students with disabilities to determine the severity and cost of their disabilities. Based upon the expense and degree of the special services in the IEP, the administrators discriminated by refusing entry to students whose needs it felt were too costly or difficult to serve (i.e. students requiring 1:1 aides and students with behavioral challenges) even though these students had been drawn from a lottery permitting their attendance.

26. Mitchell informed the administrators that such discrimination was illegal. Indeed, it is: "A public charter school shall be subject to all federal and state laws and constitutional provisions prohibiting discrimination on the basis of disability…" Tenn. Code Ann. § 49-13-111(i)

27. In response to Mitchell's statements, Intrepid administrators said they would admit the students with disabilities but just tell the parents of those children that, while their student is "welcome," Intrepid is incapable of providing the needed special education services and supports.

28. Mitchell advised administration that *this* practice was just as illegal because Intrepid cannot counsel parents out of attending due to the nature, extent, or severity of the student's disability. That is, Intrepid must follow the law and provide the necessary and appropriate special education supports and services (just like state and federal law and the Charter Agreement all require) for *all* students.

29. In August of 2024, Intrepid's Human Resources Director, Amy Shelton, requested Intrepid's Master Schedule. The Schedule showed which teachers were assigned to which classes. In reviewing the teachers, Mitchell discovered that most teachers—both general education and special education—lacked a valid teaching license and/or the necessary special education certification in the state of Tennessee.

30. Mitchell observed Ms. Shelton *change the names* of the teachers of record wherever the actual teacher of record lacked a teaching license. This fraud made it *appear* as if licensed teachers were actually the teachers of record. Shelton submitted these falsified teachers of record to MNPS, the Authorizer and LEA.

31. This licensure documentation was obviously falsified as Shelton had licensed teachers listed as the teacher of record for multiple classes simultaneously. She listed

7

Case 3:24-cv-01405   Document 1   Filed 11/27/24   Page 7 of 13 PageID #: 7

administrators with teaching licenses as teachers of record, including Mitchell herself, even though they did not actually teach the classes. And the individual Intrepid designated as a special education teacher lacked both a license and special education certification. As with the other names, Shelton substituted an entirely different person as teacher of record.

32. Shelton, as Human Resources Manager, instructed Mitchell to match her falsified names to a similarly falsified online platform. At that point, Mitchell reported the fraud internally to Intrepid's Administration, including its principal, but administration ordered Shelton to follow the instruction of Human Resources. Therefore, Mitchell followed the order, then promptly contacted MNPS to report the illegal activity.

33. First, Mitchell reported to MNPS the discrimination by Intrepid with respect to denying and discouraging students with disabilities whose needs Intrepid did not want to support from attending Intrepid. These were illegal exclusions under IDEA, Section 504, the ADA, and the Charter Agreement.

34. Second, Mitchell reported to MNPS the falsifications of licensed and certified teachers of record by Intrepid. This too violated the IDEA, Section 504, the ADA, and the Charter Agreement. Mitchell hand-delivered the falsified documents to illustrate Intrepid's deception.

35. In October 2024, MNPS investigated Mitchell's reports of illegal activity. It was obviously apparent to Intrepid that Mitchell was the reporter (having reported the same issues internally first). On November 18, 2024, Intrepid terminated Mitchell's employment in retaliation for her reporting illegal activity.

36. Intrepid's true reasons for terminating Mitchell's employment were in retaliation for Mitchell's speech about the illegal activities affecting regular and special education students.

Intrepid *claimed* the reason was Mitchell expressing a "firm unwillingness to be the primary leader of all academic operations, which includes testing." That was obviously pretextual—*not* the real reason whatsoever—as Mitchell did no such thing.

37. The termination of employment has caused Mitchell the loss of a six-figure income and employment-related benefits. She has suffered indignity, emotional harm (frustration, anger, upset, humiliation), and reputational harm from the wrongful termination of her livelihood.

## IV. LEGAL CLAIMS

38. The following facts are incorporated, upon which Plaintiffs bring the following causes of action against Intrepid.

39. A charter school in Tennessee is a "public school." Tenn. Code Ann. § 49-13-104(12). It receives the same funding that other students attending Tennessee public schools receive. *Id.* at §49-13-112. The charter school is subject to being sued. *Id* at §49-13-124.

40. Mitchell spoke both internally to Intrepid and externally to Intrepid on matters of serious public concern—(1) discrimination against students with disabilities; and (2) falsified teacher of record documentation to mask the lack of appropriate licensure of regular education teachers and certification for special education teachers. And for her conduct she suffered retaliation.

*Count I: IDEA, Title II of the ADA, and Section 504 Retaliation*

41. Students' rights to equal access and participation under Title II of the ADA and Section 504 may be delivered *through* an IEP under the IDEA. 34 C.F.R. §104.33(b)(2). The Individuals with Disabilities Education Act (IDEA) is the nation's preeminent disability rights statute for affording individuals with disabilities an appropriate education. 20 U.S.C.

§1412(a)(1)(A). "Children with disabilities who attend public charter schools and their parents retain all rights under this part [the IDEA]." 34 C.F.R. §300.209(a). Accordingly, anti-retaliation rights under IDEA are ensured through Title II and Section 504.

42. Title II of the ADA applies to "non-disabled persons who are retaliated against for attempting to protect the rights of the disabled." *Wilbanks v. Ypsilanti Cmty. Schs*, 742 Fed. Appx. 84, 87 (6th Cir. 2018) (citing *Barker v. Riverside Cty. Off. Of Educ.,* 584 F.3d 821 (9th Cir. 2009)). Mitchell is a non-disabled person who attempted to protect the rights of the disabled—those students with IEPs and the need for related services to equally access an education at Intrepid.

43. Title II of the ADA's anti-retaliation provision states in relevant part: "No person shall discriminate against *any individual* because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a)(emphasis added). Similarly, the Rehabilitation Act incorporates the ADA's substantive standards for retaliation claims. *See* 29 U.S.C. § 794(d). Like Title II, charter schools that receive federal funds must comply with Section 504. 34 C.F.R. 104.31.

44. Under Section 504 and Title II of the ADA, Mitchell advocated on behalf of students with disabilities, reporting discrimination internally and externally. Intrepid fired her in retaliation for her protected opposition to discrimination.

*Count II: First Amendment and 42 U.S.C. §1983*

45. Title 42 U.S.C. § 1983 of the United States Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory . . . , subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

10

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

46. Under the First Amendment and 42 U.S.C. §1983, the Defendant, through persons acting under color of state law with final decision-making authority, engaged in retaliation for Mitchell's protected speech. Mitchell did speak on matters of public concern, she suffered an adverse employment action (termination), and her speech was the substantial or motivating cause of the adverse employment action.

47. Defendant was deliberately indifferent in its actions. But for Mitchell's speech and opposition—*because of* these activities—she would not have had her employment terminated by Intrepid.

*Count III: Tennessee Public Protection Act*

48. Tennessee's Public Protection Act (the TPPA), Tenn. Code Ann. §50-1-304(b), was "enacted to protect employees from being discharged in retaliation for 'blowing the whistle' on infractions of rules, regulations, or the law pertaining to the health, safety, and general welfare of the public." *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002).

49. Mitchell's employment was terminated by Intrepid solely for her refusal to remain silent about ("blowing the whistle") Intrepid's infractions pertaining to the health and general welfare—the education—of both students with and without disabilities. It excluded based on disabilities those students it did not want. It failed to legally serve the ones it did accept. And it created a fraud to cover its acts.

11

Case 3:24-cv-01405   Document 1   Filed 11/27/24   Page 11 of 13 PageID #: 11

## V. RELIEF

Wherefore, Plaintiff requests the following relief of the Defendant:

A. That proper process issue along with a copy of this Amended Complaint requiring Defendant to appear and answer;

B. A declaration that Defendant has violated federal or state laws, for the reasons outlined above;

C. Reinstatement to her position with all benefits;

D. Appropriate monetary damages sustained by the Plaintiff, including but not limited to:

    1. Lost income including lost wages (front pay and back pay), loss of earning capacity, loss of health insurance, payment of COBRA coverage, loss of pension or retirement benefits, sick leave, vacation time, and any other emoluments of employment;

    2. Damage to her reputation; pain and suffering; and humiliation and embarrassment and emotional harm;

E. Reasonable attorneys' fees and costs, 42 U.S.C. §12205 and §1988; and

F. Any other legal or equitable relief to which Plaintiff is entitled.

G. **Plaintiff demands a jury.**

Respectfully submitted,

**GILBERT LAW, PLC**
s/ Justin S. Gilbert
Justin S. Gilbert (TN BPR No. 017079)
100 W. Martin Luther King Blvd, Suite 501
423.756.8203 (T)
Chattanooga, TN 37402

&

**THE SALONUS FIRM, PLC**
/s Jessica F. Salonus
JESSICA F. SALONUS (TN Bar No. 28158)
139 Stonebridge Boulevard
Jackson, TN 38305
Telephone: 731-300-0970
jsalonus@salonusfirm.com

13